**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

STEVEN OSSLER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SET FORTH, INC. and CENTREX SOFTWARE, INC.,

Defendants.

Case No.

**CLASS ACTION COMPLAINT**

1. **Negligence**
2. **Breach of Implied Contract**
3. **Unjust Enrichment/Quasi-Contract**
4. **Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**
5. **Invasion of Privacy**

**JURY TRIAL DEMANDED**

Plaintiff STEVEN OSSLER ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants Set Forth, Inc. and Centrex Software, Inc. ("Set Forth" or "Defendants") based upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigations of his attorneys.

## NATURE OF THE ACTION

1. Defendants failed to properly notify consumers after cybercriminals breached Defendants' databases and stealing highly sensitive information from more than 1.5 million consumers. Defendants learned of the massive breach as early as May 21, 2024, but for unexplained reasons, opted to withhold the information from consumers for more than five months. It takes just a few seconds and a few keystrokes for a cybercriminal to empty a bank account once armed with account numbers and social security numbers. Defendants had their data servers breached by cybercriminals, allowing them to illegally access and exfiltrate the highly sensitive personal information of Plaintiffs.[1] The breached information included, *inter alia*, names, Social

[1] https://www.setforth.com/notice-of-data-security-incident/.

Security numbers, dates of birth, and addresses.

2. Defendants tout themselves as financial services companies that provide administrative services for debt relief programs and solicits the sensitive ("PII") of millions of its customers in return for its services.

3. Under statute and regulation, Defendants had a duty to implement reasonable, adequate industry-standard data security policies safeguard to customer PII. Defendants acknowledge these duties in promising to use security measures that comply with federal law. Defendants represent that their measures include computer safeguards and secured files and buildings. The Defendants promise to limit personal information access to only employees, agents and representatives who need to know.

4. Plaintiff, individually and on behalf of those similarly situated persons (hereafter "Class Members"), bring this Class Action to secure redress against Defendants for their reckless and negligent violation of their privacy rights. Plaintiff and Class Members are members and former members of Defendants who had their PII collected, stored, and ultimately breached by Defendants.

5. Plaintiff and Class Members have suffered injuries and damages. As a result of Defendants' wrongful actions and inactions, Plaintiff and Class Members' PII has been compromised. Plaintiff and Class Members have had their privacy rights violated and are now exposed to a heightened risk of identity theft and credit fraud for the remainder of their lifetimes. The substantial increase of fraud and identity theft arise from the Name, Date of Birth, and Social Security Numbers stolen by cybercriminals who intentionally targeted that information to commit identity theft and fraud. Plaintiff and Class Members must now spend time and money on prophylactic measures, such as increased monitoring of their personal and financial accounts and

the purchase of credit monitoring services, to protect themselves from future loss. Plaintiff and Class Members have also lost the value of their PII. SSNs are unique identifiers that can be used to open new accounts, apply for loans, and access existing financial accounts. This makes them highly valuable for identity thieves. Social Security Numbers are considered a primary type of personally identifiable information and are supposed to be kept secure and private. When breached, they provide a critical piece of information for fraudsters. The criminals are using the combination of Social Security Numbers with other personal data, such as full names, addresses, and dates of birth, to create comprehensive fake identities. This substantially increases the risk for fraud, including credit card fraud, loan fraud, and tax fraud.

6. As a result of Defendants' wrongful actions and inactions, consumer information was stolen. Plaintiff and Class Members who have had their PII compromised by nefarious third-party hackers, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages. Plaintiff and Class Members bring this action to secure redress against Defendants.

## THE PARTIES

7. Plaintiff Steven Ossler is a California citizen residing in Villa Park, Illinois. Plaintiff is a customer of Defendants. On or around November 8, 2024, Plaintiff received a data breach notice from Defendants informing him that his PII had been implicated in Defendants' data breach.

8. Defendant, Set Forth, Inc., is a corporation incorporated in Delaware and with its principal place of business at 1900 E Golf Road, Suite 550, Schaumburg, Illinois 60173.

9. Defendant, Centrex Software, Inc., is a stock corporation incorporated in California and with its principal place of business at 3090 Pullman Street, Costa Mesa, California 92626.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction for this Class Action pursuant to the causes of action alleged herein and the Illinois Code of Civil Procedure 735 ILCS 5/2-801.

11. This Court has personal jurisdiction over Defendants because Set Forth, Inc. is headquartered in Illinois and because all Defendants regularly conduct business in Illinois and have sufficient minimum contacts in Illinois.

12. Venue is appropriate pursuant to Illinois Code of Civil Procedure 735 ILCS 5/2-101 because Defendant is located in Cook County.

## FACTUAL ALLEGATIONS

### A. Defendants Solicit the PII of Consumers in Return for Services

13. Defendants provide cloud-based customer relationship (CRM) solutions that are powered by the Defendants' Platform.

14. Defendants require and solicit the PII of consumers in return for rendering their services to thousands of current and former consumers for their services.

15. Defendants actively solicited, agreed to receive, and accepted sensitive PII from their customers, including but not limited to financial and personal data. Defendants expressly promised to safeguard this sensitive PII according to their own stated privacy policies, as well as applicable federal and state laws. Defendants represented that they employed security measures designed to comply with federal law, including the use of computer safeguards, secured physical files, and restricted access to sensitive information, which they claimed was limited to employees, agents, and representatives with a legitimate need to know. However, Defendants failed to employ reasonable security measures that fell below their own internal policies, applicable federal and state laws resulting in cybercriminals stealing Plaintiff's and Class Members' PII.

16. State and federal laws impose affirmative duties on businesses, including Defendants, to exercise reasonable care in protecting the PII of Plaintiff and Class Members. These laws further require Defendants to provide timely and adequate notice to affected individuals in the event of a data breach. Such notice is essential to afford Plaintiff and Class Members a meaningful opportunity to take prompt protective measures to mitigate harm, such as preventing fraud and minimizing long-term damage to their credit and financial security. Defendants' failure to meet these legal obligations directly endangered the rights and interests of Plaintiff and Class Members.

### B. Defendants' Failure to Provide Reasonable, Adequate, and Compliant Data Security

17. Defendants expressly acknowledged their duty to exercise reasonable care in protecting the sensitive PII of Plaintiff and Class Members. In their own statements, Defendants admitted to collecting a wide range of sensitive PII, including but not limited to names, addresses, telephone numbers, email addresses, dates of birth, credit card information, Social Security numbers, income details, financial account information, and IP addresses. Defendants unequivocally stated that they employed security measures, including computer safeguards and secured physical files, to protect this PII from unauthorized access and use, in compliance with state and federal law.

18. Defendants also admitted to collecting and storing PII from Plaintiff and Class Members through various sources, including direct interactions, credit reports, third-party sources, and other entities, without offering any option for individuals to opt out of this collection, transfer, and storage. **Defendants stated that Plaintiff and Class Members' consent to these practices was a condition for using Defendants' services, leaving them no meaningful alternative but to provide sensitive information.** Defendants also retained the right to disclose PII to creditors,

service providers, and other entities as they deemed fit, again without providing any opt-out mechanism.

19. By compelling Plaintiff and Class Members to entrust their sensitive PII and affirmatively representing their obligation to safeguard this data under state and federal law, Defendants acknowledged their duty to exercise reasonable care. Despite these representations, Defendants failed to adequately protect this PII, directly resulting in harm to Plaintiff and Class Members.

### C. Defendants' Obligation to Protect Consumer PII Under State and Federal Law

20. Defendants failed to comply with each of these state and federal statutes by failing to implement and maintain reasonable security procedures to protect Plaintiff and Class Members' PII. The Federal Trade Commission Act (15 U. S. C. §45), Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq., and the Illinois PII Protection Act ("IPIPA"), 815 ILCS 530/1 et seq. all require and inform Defendants' duties when it solicited, received and maintained Plaintiff's and Class Members' PII.

### D. Applicable Standards of Care

21. In addition to their obligations under state and federal law, Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer system and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and Class Members.

22. Defendants owed a duty to Plaintiff and the Class Members to design, maintain,

and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

23. Defendants owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed the PII in their possession, including adequately training their employees and others who accessed PII in their computer systems on how to adequately protect PII.

24. Defendants owed a duty of care to Plaintiff and Class Members to implement processes that would detect a breach of their data security systems in a timely manner.

25. Defendants owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

26. Defendants owed a duty to Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to provide or entrust their PII to Defendants.

27. Defendants owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when the data breach occurred.

28. Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendants received PII from Plaintiff and Class Members with the understanding that Plaintiff and Class Members expected their PII to be protected from disclosure. Defendants knew that a breach of their data systems would cause Plaintiff and Class Members to incur damages.

29. Defendants owed Plaintiff and Class Members a duty of care to implement and

maintain reasonable data security measures to protect the PII in their possession. This duty arose from the foreseeable and probable risk of harm associated with their acknowledged substandard practices and deficiencies in data security, which Defendants knew fell below industry standards. As an entity entrusted with valuable PII, Defendants were aware of the legal obligations and industry standards requiring robust safeguards to protect sensitive information and prevent breaches. Defendants knew or should have known that inadequate employee training, failure to establish timely breach detection protocols, and disregard for data security warnings and alerts created a heightened risk of unauthorized access to Plaintiff and Class Members' PII.

30. Given the inherent value of PII and the widespread understanding within the industry of its attractiveness to cybercriminals, Defendants knew that a failure to adequately secure their systems made a data breach not only foreseeable but inevitable. Despite this, Defendants failed to disclose their inadequate security practices, a material fact that would have influenced Plaintiff and Class Members' decision to entrust their PII to Defendants.

31. By virtue of receiving and retaining Plaintiff and Class Members' sensitive PII with the knowledge that their deficient security measures would likely result in harm, Defendants created a duty of care to safeguard the PII, promptly detect breaches, and disclose incidents in a timely and accurate manner. The foreseeability of harm, combined with Defendants' legal obligations and common industry knowledge, imposed a clear and actionable duty to protect Plaintiff and Class Members from the significant and foreseeable consequences of a data breach.

**E. Stolen Information is Valuable to Hackers and Thieves**

32. It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers. Especially in the technology industry, the issue of data security and threats thereto is well known. Despite well-publicized litigation and frequent public

announcements of data breaches, Defendants opted to maintain an insufficient and inadequate system to protect the PII of Plaintiff and Class Members.

33. Plaintiff and Class Members value their PII, as in today's electronic-centric world, their PII is required for numerous activities, such as new registrations to websites, or opening a new bank account, as well as signing up for exclusive deals.

34. Legitimate organizations and criminal underground alike recognize the value of PII. That is why they aggressively seek and pay for it.

35. PII is highly valuable to hackers. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. PII that is stolen from the point of sale are known as "dumps."[2]

36. Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

37. In addition to PII, a hacked email account can be very valuable to cyber criminals. Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[3]

38. As shown below, a hacked email account can be used to link to many other sources

---

[2] *See All About Fraud: How Crooks Get the CVV*, Krebs on Security (April 26, 2016), https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/ (last accessed February 8, 2023).
[3] *Identity Theft and the Value of Your Personal Data*, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data. (last accessed February 8, 2023.)

of information for an identity thief, including any purchase or account information found in the hacked email account.[4]




39. Hacked information can also enable thieves to obtain other personal information through "phishing." According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[5]

### F. The Data Breach Has and Will Result in Additional Identity Theft and Identity Fraud

40. Defendant failed to implement and maintain reasonable security procedures and

---

[4] Brian Krebs, *The Value of a Hacked Email Account*, Krebs on Security (June 13, 2013), https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/. (last accessed February 8, 2023).

[5] *Report on Phishing* (Oct. 2006), https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf (last accessed February 8, 2023).

practices appropriate to protect the PII of Plaintiff and the Class Members. The ramification of Defendant's failure to keep Plaintiff and the Class Members' data secure is severe.

41. Defendants were on notice of the escalating and pervasive risks of data breaches and cyberattacks, as evidenced by the significant increase in such incidents across the United States and globally. The number of data breaches in the U.S. surged from 447 in 2012 to over 3,200 in 2023, with Microsoft Office applications being the most commonly exploited globally, accounting for 61 percent of exploits between November 2021 and October 2023. Online fraud caused Americans $12.5 billion in losses in 2023. These alarming trends underscored the urgent need for robust data security measures, making the likelihood of breaches entirely foreseeable to Defendants, who failed to implement adequate safeguards to protect Plaintiff and Class Members' sensitive information despite the well-known and increasing risks.

42. In 2023, the number of data compromises in the United States stood at 3,205 cases. Meanwhile, over 353 million individuals were affected in the same year by data compromises, including data breaches, leakage, and exposure.[6] In 2022, financial services were one of the top three industry sectors that recorded most data breaches. The financial services industry experienced a significant rise in data compromises, with the total number reaching 744 incidents in 2023. This marks a dramatic increase from just 138 incidents reported in 2020, showcasing a concerning upward trend in data security breaches within this sector.

43. It is incorrect to assume that reimbursing a consumer for a financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal

[6] Ani Petrosyan. (2024). *Number of data breaches and victims U.S. 2023 | Statista. Statista.* https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last accessed November 26, 2024).

information used for fraudulent purposes, about a third (32%) spent a month or more resolving problems."[7] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*.

**G. Annual Monetary Losses from Identity Theft are in the Billions of Dollars**

44. Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013. There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO, Report to Congressional Requesters (June 2007), http://www.gao.gov/new.items/d07737.pdf. (last accessed February 8, 2023.)

45. This is particularly the case with financial sector data breaches such as Defendants, as the information implicated, such as social security numbers cannot be changed. Once such information is breached, malicious actors can continue misusing the stolen information for years to come. The financial consequences of identity theft are profoundly damaging, encompassing substantial direct monetary losses. Victims often experience an average loss of $880, but for new account misuse, this can be as high as $3,430, significantly impacting their finances.[8]

46. Identity theft caused by data breaches has long-lasting and severe impacts on

---

[7] *See Victims of Identity Theft*, U.S. Department of Justice (September 2015, revised November 13, 2017), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (last accessed February 8, 2023).
[8] *Victims of Identity Theft, 2021.* (2023). Bureau of Justice Statistics. https://bjs.ojp.gov/press-release/victims-identity-theft-2021 (Last accessed November 26, 2024).

victims, including Plaintiff and Class Members. Victims often face significant challenges in restoring their credit scores, which can take years to recover even after fraudulent accounts are closed. A compromised credit report can hinder essential financial opportunities, such as securing loans or mortgages, creating prolonged financial instability.[9] Moreover, resolving identity theft cases typically requires extensive interactions with banks, credit bureaus, and law enforcement, consuming substantial time and resources. This process imposes financial burdens and emotional distress, often resulting in frustration, chronic stress, and adverse effects on victims' mental health and overall well-being. Defendants' failure to safeguard Plaintiff and Class Members' sensitive PII directly exposed them to these foreseeable and devastating harms.

47. Plaintiff and the Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any financial or identity fraud they suffer.

**H. Plaintiff and Class Members Suffered Damages**

48. Defendants failed to establish appropriate administrative, technical, and physical security measures to ensure the confidentiality and integrity of Plaintiff and Class Members' PII, despite legal obligations under federal and state law, as well as contractual commitments. By disregarding known industry standards and foreseeable threats, Defendants created an environment that effectively invited cybercriminals to exploit these vulnerabilities, making the exposure of Plaintiff and Class Members' PII not only possible but inevitable. This failure directly enabled the data breach and resulted in the harm suffered by Plaintiff and Class Members.

49. Plaintiff and Class Members' PII is private and sensitive in nature and was

---

[9] *Edison Insurance Company. (2024). How Identity Theft Can Impact Your Credit and Finances*. Florida Peninsula. https://www.edisoninsurance.com/blog/how-identity-theft-can-impact-your-credit-and-finances (Last accessed November 26, 2024).

inadequately protected by Defendants. Defendants did not obtain Plaintiff and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards. Defendants' inadequate cybersecurity measures made invited criminal hackers to intentionally target and steal Plaintiff's and Class Members' PII to commit identity theft and financial fraud. The cybercriminals also put Plaintiff's and Class Members' PII on the Dark Web for sale.

50. As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting data breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, paying for credit and identity monitoring services, spending time on credit and identity monitoring, placing "freezes" and "alerts" with credit reporting agencies, contacting their personal and financial institutions, closing or modifying personal and financial accounts, and closely reviewing and monitoring their credit reports, financial accounts for unauthorized activity.

51. Plaintiff and Class Members also lost the value of their PII. PII is a valuable commodity, as evidenced by numerous companies which purchase PII from consumers, such as UBDI, which allows its users to link applications like Spotify, Twitter, or Apple Health and opt-in to paid opportunities to earn income, and Brave, which uses a similar business model, and by market-based pricing data involving the sale of stolen PII across multiple different illicit websites.

52. Top10VPN, a secure network provider, has compiled pricing information for stolen PII, including $160.15 for online banking details, $35.00 for credit reports, and $62.61 for passports. Standalone Yahoo email accounts have been listed for as little as $0.41, while banking logins are in the range of $500, and verified Paypal accounts with high balances are listed at as

much as $2,000.

53. In addition, Privacy Affairs, a cyber security research firm, has listed the following prices for stolen PII:

| | |
|---|---|
| U.S. driving license, high quality: | $550 |
| Auto insurance card: | $70 |
| AAA emergency road service membership card: | $70 |
| Wells Fargo bank statement: | $25 |
| Wells Fargo bank statement with transactions: | $80 |
| Rutgers State University student ID: | $70 |

54. Finally, Plaintiff and Class Members have lost the benefit of their bargains. Plaintiff and Class members entered into agreements with Defendants under the reasonable but mistaken belief that it would reasonably and adequately protect their PII. Plaintiff and Class Members would not have entered into such agreements with Defendants and surrendered their PII had they known that Defendants would not reasonably and adequately protect their PII. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the financial services that include reasonable and adequate data security that they bargained for, and the financial services that do not that they actually received.

55. Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a. The improper disclosure and theft of their PII;

b. The imminent and impending injury flowing from potential fraud and identity

theft posed by their PII being exposed to and misused by unauthorized third-party hackers;

c. The untimely and inadequate notification of the data breach;

d. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach; and

e. Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market.

f. Damages in the amount

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this class action under Illinois Code of Civil Procedure 735 ILCS 5/2-801 individually and on behalf of all members of the following class: Plaintiff intends to seek certification of a Nationwide Class. The Class is initially defined as follows:

The Nationwide Class, initially defined as:

> All persons residing in the United States of America who received a data breach notice informing them that their PII had been breached by unauthorized third parties as a result of Defendants' data breach.

Excluded from each of the above Classes is Defendants, including any entity in which Defendants has a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

57. *Numerosity*: The members of the Classes are so numerous that the joinder of all members is impractical. The proposed Class includes at least 1,500,000 members. The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, such as reservation receipts and confirmations.

58. *Commonality and Predominance*: There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

b. Whether Defendants violated common and statutory laws by failing to implement reasonable security procedures and practices;

c. Which security procedures and which data-breach notification procedure should Defendants be required to implement as part of any injunctive relief ordered by the Court;

d. Whether Defendants knew or should have known of the security breach prior to the disclosure;

e. Whether Defendants has complied with any implied contractual obligation to use reasonable security measures;

f. Whether Defendant's acts and omissions described herein give rise to a claim of negligence;

g. Whether Defendants knew or should have known of the security breach prior to their disclosure;

h. Whether Defendants had a duty to promptly notify Plaintiff and Class Members that their PII was, or potentially could be, compromised;

i. What security measures, if any, must be implemented by Defendants to comply with their duties under state and federal law;

j. The nature of the relief, including equitable relief, to which Plaintiff and the Class Members are entitled; and

k. Whether Plaintiff and the Class Members are entitled to damages, civil penalties, and/or injunctive relief.

59. *Typicality*: Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was misused and/or disclosed by Defendants.

60. *Adequacy of Representation*: Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other members of the Classes and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Classes will be fairly and adequately represented by Plaintiff and his counsel.

61. *Superiority of Class Action*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action. Damages for any individual class member are likely insufficient to justify the cost of individual litigation so

that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

62. Class certification is also appropriate because Defendants has acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate to the Classes as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**Negligence**

(On Behalf of Plaintiff and the Nationwide Class)

63. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 63, inclusive, of this Complaint as if set forth fully herein.

64. In 2016, the Federal Trade Commission ("FTC") updated their publication, "Protecting Personal Information: A Guide for Business," which establishes guidelines for fundamental data security principles and practices for business. [10] Among other things, the guidelines dictate businesses should protect any personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses implement an intrusion detection system to expose breaches as soon as they occur; monitor all incoming traffic for activity indicating someone is attempting to infiltrate or hack the system; monitor instances when large amounts of data are transmitted to or from the system; and have a response plan ready in the event

[10] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf. (last accessed February 8, 2023).

of a breach. [11] Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures. [12]

65. Defendant owed Plaintiff and the Class Members a duty of care in the handling of customers' PII. This duty included, but was not limited to, keeping that PII secure and preventing disclosure of the PII to any unauthorized third parties, including preventing cybercriminals from stealing PII motivated to criminally profit by using the PII to commit fraud for illicit gains and/or selling on the PII on the Dark Web for others to commit fraud for illicit gains. This duty of care existed independently of Defendants' contractual duties to Plaintiff and the Class Members. Under the FTC Guidelines, and other sources of industry-wide cybersecurity standards, Defendants is obligated to incorporate adequate measures to safeguard and protect PII that is entrusted to them in their ordinary course of business and transactions with customers.

66. Defendants owed Plaintiff and Class Members an independent duty of care because they were victims of a well-defined, foreseeable, and probable cybercrime resulting directly from Defendants' failure to implement and maintain adequate security measures. The cybercriminals intentionally attacked Defendants' computer system for the purpose of obtaining Plaintiff's and Class Members PII. Defendants were on notice of the significant and escalating risks posed by cybercriminals targeting sensitive PII and the inherent value of such information. By actively seeking and collecting PII as a core component of their business model, Defendants created a

---

[11] *Id*.

[12] Federal Trade Commission, *Start With Security: A Guide for Business* (Jun. 2015) https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf. (last accessed February 8, 2023).

proximate relationship with Plaintiff and Class Members and undertook an affirmative obligation to protect this information. Defendants' knowledge of these risks, combined with their decision to ignore industry standards and best practices for data security, rendered the harm suffered by Plaintiff and Class Members inevitable. This duty is further supported by common law principles and industry standards that impose an obligation on entities to safeguard the sensitive personal information they collect and retain.

67. Pursuant to the Federal Trade Commission Act (15 U. S. C. §45), Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' PII. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the businesses' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U. S. C. § 45. Orders from these actions further clarify the measures businesses are required to undertake in order to satisfy their data security obligations. [13]

68. Additional industry guidelines which provide a standard of care can be found in the National Institute of Standards and Technology's ("NIST's") *Framework for Improving Critical Infrastructure Cybersecurity* (Apr. 16, 2018), https://nvlpubs. nist. gov/nistpubs/CSWP/ NIST. CSWP. 04162018. pdf. Among other guideposts, the NIST's framework identifies seven steps for establishing or improving a cybersecurity program (section 3. 2). Those steps are:

> *Step 1: Prioritize and Scope*. The organization identifies its business/mission objectives and high-level organizational priorities. With this information, the organization makes strategic decisions regarding cybersecurity implementations and determines the scope of systems and assets that support the

[13] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-securityenforcement (last accessed February 8, 2023).

selected business line or process. The Framework can be adapted to support the different business lines or processes within an organization, which may have different business needs and associated risk tolerance. Risk tolerances may be reflected in a target Implementation Tier.

*Step 2: Orient*. Once the scope of the cybersecurity program has been determined for the business line or process, the organization identifies related systems and assets, regulatory requirements, and overall risk approach. The organization then consults sources to identify threats and vulnerabilities applicable to those systems and assets.

*Step 3: Create a Current Profile*. The organization develops a Current Profile by indicating which Category and Subcategory outcomes from the Framework Core are currently being achieved. If an outcome is partially achieved, noting this fact will help support subsequent steps by providing baseline information.

*Step 4: Conduct a Risk Assessment*. This assessment could be guided by the organization's overall risk management process or previous risk assessment activities. The organization analyzes the operational environment in order to discern the likelihood of a cybersecurity event and the impact that the event could have on the organization. It is important that organizations identify emerging risks and use cyber threat information from internal and external sources to gain a better understanding of the likelihood and impact of cybersecurity events.

*Step 5: Create a Target Profile*. The organization creates a Target Profile that focuses on the assessment of the Framework Categories and Subcategories describing the organization's desired cybersecurity outcomes. Organizations also may develop their own additional Categories and Subcategories to account for unique organizational risks. The organization may also consider influences and requirements of external stakeholders such as sector entities, customers, and business partners when creating a Target Profile. The Target Profile should appropriately reflect criteria within the target Implementation Tier.

*Step 6: Determine, Analyze, and Prioritize Gaps*. The organization compares the Current Profile and the Target Profile to determine gaps. Next, it creates a prioritized action plan to address gaps – reflecting mission drivers, costs and benefits, and risks – to achieve the outcomes in the Target Profile. The organization then determines resources, including funding and workforce, necessary to address the gaps. Using Profiles in this manner encourages the organization to make informed decisions about cybersecurity activities, supports risk management, and enables the organization to perform cost-effective, targeted improvements.

*Step 7: Implement Action Plan*. The organization determines which actions to take to address the gaps, if any, identified in the previous step and then adjusts its current cybersecurity practices in order to achieve the Target Profile. For further guidance, the Framework identifies example Informative References regarding the Categories and Subcategories, but organizations should determine which standards, guidelines, and practices, including those that are sector specific, work best for their needs.

69. In addition to their obligations under federal regulations and industry standards, Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and the Class Members.

70. Defendants owed a duty to Plaintiff and the Class Members to design, maintain, and test their internal data systems to ensure that the PII in Defendant's possession was adequately secured and protected.

71. Defendants owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the PII in their custodianship, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

72. Defendant owed a duty to Plaintiff and the Class Members to implement processes or safeguards that would detect a breach of their data security systems in a timely manner.

73. Defendant owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

74. Defendant owed a duty to Plaintiff and the Class Members to timely disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material consideration in Plaintiff and Class Members' decisions to entrust their PII to Defendants.

75. Defendant owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when data breaches occur.

76. Defendant owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices and systems. Defendants collected PII from Plaintiff and the Class Members. Defendants knew that a breach of their data systems would cause Plaintiff and the Class Members to incur damages.

77. Defendants breached their duties of care to safeguard and protect the PII which Plaintiff and the Class Members entrusted to it. Defendants adopted inadequate safeguards to protect the PII and failed to adopt industry-wide standards set forth above in their supposed protection of the PII. Defendants failed to design, maintain, and test their computer system to ensure that the PII was adequately secured and protected, failed to create and implement reasonable data security practices and procedures, failed to implement processes that would detect a breach of their data security systems in a timely manner, failed to disclose the breach to potentially affected customers in a timely and comprehensive manner, and otherwise breached each of the above duties of care by implementing careless security procedures which led directly to the breach.

78. Defendants were motivated to breach their duties to employ reasonable security measures to save on costs and reap higher profits. Defendants generate revenue through their various services provided to debt relief companies and their customers. The Defendants' business model focuses on supporting the debt relief industry with a suite of solutions and tools. Defendants offer a range of services including:

i. Customer Relationship Management (CRM): This system helps debt relief service providers manage interactions with customers, improving their service delivery and operational efficiency.

ii. Payment Processing: Defendants facilitate secure payment transactions for clients, ensuring seamless financial operations between debt relief companies and their customers.

iii. Marketing Automation: Defendants support their partners with tools to enhance their marketing efforts, thereby attracting and retaining clients more effectively.

iv. Dedicated Account Management: Services include personalized support for debt relief companies to optimize their operations and enhance customer relations.

79. Defendants profit mainly through service fees charged to debt relief companies that utilize their platforms. By shirking on their adequate security measures, Defendants were able to realize higher profits. These fees can include:

i. Transaction Fees: Defendants earns revenue from transaction processing fees each time a customer makes a payment through their systems.

ii. Subscription Fees: Debt relief companies pay subscription fees for accessing the CRM and other integrated services offered by Defendants.

iii. Consultative Services: They may also offer consultancy on compliance and operational efficiency, adding another revenue stream.

80. Defendants owed a duty to exercise reasonable care in the maintenance and handling Plaintiff's and Class Members' PII, employ industry standard security procedures sufficient to reasonably protect the PII from theft and data breach, promptly detect cyberattacks and unauthorized access and notify Plaintiff and Class Members within a reasonable time after the data breach to help Plaintiff and Class Members take protective measures at the earliest

opportunity.

81. Defendants also had a duty to exercise appropriate practices to remove PII they were no longer required to retain under applicable regulations.

82. Defendants owed Plaintiff and Class Members a duty of care informed and by the FTC, which sets and enforces standards for the protection of consumer data. The FTC, through its guidelines, enforcement actions, and public statements, has consistently defined reasonable data security practices that businesses must follow when collecting, storing, and processing sensitive PII. These standards include implementing administrative, technical, and physical safeguards to ensure the confidentiality, integrity, and security of consumer information.

83. Defendants owed a duty to Plaintiff and Class Members because they failed to disclose material information regarding their inadequate cybersecurity measures. Defendants knowingly omitted the fact that their security practices fell below industry standards, violated state and federal laws, and were inconsistent with Defendants' own internal policies. Had Defendants disclosed the truth about their deficient security measures, including the heightened risk of theft of Plaintiff's and Class Members' PII and the fact that these deficiencies made Defendants a prime target for cybercriminals, Plaintiff and Class Members would not have entrusted their sensitive information to Defendants or used their services. Defendants' omissions directly deprived Plaintiff and Class Members of the opportunity to make an informed decision about whether to engage with Defendants.

84. Defendants were on notice of these standards, as the FTC has repeatedly emphasized that inadequate data security practices that expose consumer data to unauthorized access constitute unfair or deceptive trade practices under Section 5 of the FTC Act, 15 U.S.C. § 45. By failing to implement safeguards consistent with FTC standards, Defendants breached their

duty of care to Plaintiff and Class Members, directly resulting in the exposure of their sensitive PII to foreseeable cybercriminal activity. The FTC's established guidance and enforcement actions further underscore Defendants' obligation to adopt reasonable measures to protect the PII they actively solicited and collected from Plaintiff and Class Members.

85. Defendants breached the duties set forth in 15 U.S.C. §45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. Defendants breached their duties because they failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Member's PII. Defendants did not protect the personal customer information that they keep; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of their network's vulnerabilities; and failed to implement policies to correct security problems. In violation of the NIST's Framework, Defendants, inter alia, failed to adopt sufficient resources to identify and address security gaps.

86. Defendants breached their duties by failing to exercise reasonable care in the supervision and oversight of their agents, contractors, vendors, and suppliers, as well as in the handling and securing of Plaintiff's and Class Members' personal information and PII. This negligent failure directly and proximately caused the Data Breach, resulting in the unauthorized access and exposure of Plaintiff's and Class Members' sensitive information and the injuries they suffered as a result.

87. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by knowingly disclosing and providing unauthorized access to this sensitive information to third parties, thereby exposing it to foreseeable risks of theft, misuse, and unauthorized disclosure; and failing to implement and enforce adequate

oversight and supervision of both the methods by which the PII was stored, utilized, and exchanged, and the actions of employees and agents responsible for managing and safeguarding this critical data. Defendants' actions and omissions demonstrate a flagrant disregard for their duty to protect Plaintiff's and Class Members' sensitive information, directly resulting in its unauthorized exposure and the resulting harm.

88. Defendants admitted that the PII of Plaintiff and Class Members was wrongfully stolen and disclosed to unauthorized third persons, including cybercriminals because of the Data Breach.

89. Plaintiff's and Class Members' PII has been published on the Dark Web by the criminal hackers.

90. As a direct and proximate result of Defendant's failure to adequately protect and safeguard the PII, Plaintiff and the Class members suffered damages. Plaintiff and the Class Members were damaged because their PII was accessed by third parties, resulting in substantially increased risk of identity theft, property theft and extortion for which Plaintiff and the Class members were forced to adopt preventive and remedial efforts. These damages were magnified by the passage of time because Defendants failed to notify Plaintiff and Class Members of the data breach until months later. In addition, Plaintiff and Class Members were also damaged in that they must now spend copious amounts of time combing through their records in order to ensure that they do not become the victims of fraud and/or identity theft. Plaintiff and Class Members were damaged by paying fees for Defendants' services that were more expensive than what the services were really worth because of Defendants' inadequate security measures. Had Plaintiff and Class Members known the truth about Defendants' inadequate security measures Plaintiff and Class Members would have behaved differently and used a different service.

91. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract/Unjust Enrichment**

(On Behalf of Plaintiff and the Nationwide Class)

92. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 92, inclusive, of this Complaint as if set forth fully herein.

93. Plaintiff and Class Members entered into agreements for financial services with Defendants. In making those agreements, Defendants solicited and invited Plaintiff and Class Members to provide their PII to Defendants as requirement and condition of receiving Defendants' services. Plaintiff and Class and Members accepted Defendant's offers and provided their PII to enter the agreements. As Defendants' Privacy Notice stated, the Plaintiffs and Class Members could not opt-out surrendering control of their PII to Defendants.

94. Inherent within those agreements was an implied contractual obligation that Defendants would implement reasonable and adequate data security to safeguard and protect the PII entrusted to them by Plaintiff and Class Members from unauthorized disclosure.

95. Plaintiff and Class Members read and relied on the Defendants' Privacy Notice and the assurances, promises and disclosures therein. Plaintiff and Class Members were aware that a portion of the fees paid to Defendants would be used for reasonable cybersecurity protection and measures.

96. Overt conduct by Plaintiff and Class Members and Defendants, objectively established a mutual understanding and expectation that Plaintiff's and Class Members' PII would be protected arose from between Defendants and Plaintiff and Class Members.

97. Thus, when Plaintiff and Class Members provided their PII to Defendants in exchange for Defendant's services, they entered into implied contracts with Defendants under which Defendants agreed to and was obligated to reasonably protect their PII. Plaintiff and Class provided payment to Defendants, as well as their PII, under the reasonable but mistaken belief that any money they paid to Defendants in connection to their provision of their services would be used in part to provide reasonable and adequate data security for their PII.

98. This implied contract is acknowledged and memorialized in Defendant's customer-facing documents, including, *inter alia*, Defendants' Privacy Policy, wherein it states that "[b]y providing information to us, you are consenting to the collection, use and disclosure of such personal information in the manner described in this Privacy Policy. We may disclose your personal information in order to effect or carry out any transaction that you have requested of us or as necessary to complete our contractual obligations with you. In carrying out our services, we may disclose your information, as we see fit, and as permitted by law, to your creditors and any servicers and other entities and individuals specifically necessary to effect, administer and perform our services. We may also share your information with service providers that perform business operations for us, companies that act on our behalf to market our services, or others only as permitted or required by law, such as to protect against fraud or in response to a subpoena. We may also share or transfer your information in the event we transfer or sell your account or our business assets to another provider. You may not opt out of allowing us to make the above uses of your personal information. We will retain your personal information for the length of time needed to fulfill the purposes outlined in this privacy policy unless a longer retention period is required or permitted by law. We do not sell or share your personal information to non-affiliated entities for any purpose."

99. Defendant did not provide reasonable and adequate data security for Plaintiff and Class Member's PII, and instead caused it to be disclosed to unauthorized third-party hackers. Defendants did not comply with state and federal statutes and regulations and did not comply with industry data security standards. In doing so, Defendants materially breached their obligations under implied contract.

100. That Defendants would implement such reasonable and adequate data security was a material prerequisite to the agreements between Plaintiff and Class Members. Reasonable consumers value the privacy of their PII, and do not enter into agreements for financial services with debt relief providers which are known not to protect customer data. Accordingly, Plaintiff and Class Members would not have entered into agreements with Defendants and would not have provided them with their sensitive PII, had they known that Defendants would not implement such reasonable and adequate data security.

101. As a result of Defendant's breach, Plaintiff and Class Members have lost the benefit of their bargains. Plaintiff and Class members entered into agreements with Defendants under the reasonable but mistaken belief that it would reasonably and adequately protect their PII and would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their PII. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the financial services that include reasonable and adequate data security that they bargained for, and the financial services that do not that they actually received.

102. Plaintiff and Class Members fully performed their obligations under the implied contract by providing their PII and making payments to Defendants.

103. Plaintiff and Class Members have suffered actual injury and are entitled to damages

in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment/Quasi-Contract**

(On Behalf of Plaintiff and the Nationwide Class)

104. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 104, inclusive, of this Complaint as if set forth fully herein.

105. Plaintiff and Class Members provided their PII and conferred a monetary benefit upon Defendants in exchange for financial services. Plaintiff and Class Members did so under the reasonable but mistaken belief that part of their monetary payment to Defendants would cover the implementation of reasonable, adequate, and statutorily mandated safeguards to protect their PII. Defendants was enriched when it sold their financial services at a higher price than it otherwise would have based on those reasonable but mistaken beliefs.

106. Defendant's enrichment came at the expense of Plaintiff and Class Members, who would not have paid for Defendant's services, or would have only been willing to paid substantially less for them, had they been aware that Defendants had not implement reasonable, adequate, and statutorily mandated safeguards to protect their PII.

107. As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiff and Class Members suffered have suffered damages in the form of their lost benefit of the bargains. Plaintiff and Class members entered into agreements with Defendants under the reasonable but mistaken belief that it would reasonably and adequately protect their PII and would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their PII. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the financial services that include

reasonable and adequate data security that they bargained for, and the financial services that do not that they actually received.

108. Defendant should not be permitted to retain Plaintiff's and Class Members' lost benefits, without having adequately implemented the data privacy and security procedures for themselves that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws. and industry standards. Defendants should not be allowed to benefit at the expense of consumers who trust Defendants to protect the PII that they are required to provide to Defendants in order to receive Defendant's services.

109. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**FOURTH CAUSE OF ACTION**
**Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**
**815 ILCS 505/1, et seq.**

(On Behalf of Plaintiff and the Nationwide Class)

110. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 110, inclusive, of this Complaint as if set forth fully herein.

111. This claim arises under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

112. Plaintiff and Class Members are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e).

113. Plaintiff, the Class Members, and Defendants are "persons" as defined in 815 Ill. Comp. Stat. § 505/1(c).

114. The ICFA applies to Defendants because they engaged in "trade" or "commerce,"

including the provision of services, as defined in 815 Ill. Comp. Stat. § 505/1(f). Defendants' services constitute "merchandise" under 815 Ill. Comp. Stat. § 505/1(b) and (d).

115. Defendants violated the ICFA by engaging in the following unfair and deceptive acts and practices:

i. failing to implement and maintain reasonable security measures to protect Plaintiff's and Class Members' PII, directly and proximately causing the Data Breach;

ii. failing to identify and remediate foreseeable security risks and failing to improve security measures following prior cybersecurity incidents, directly and proximately causing the Data Breach;

iii. violating their common law and statutory duties to secure Plaintiff's and Class Members' PII, including obligations imposed by the FTC Act (15 U.S.C. § 45), the Fair Credit Reporting Act (15 U.S.C. § 1681e), and the Gramm-Leach-Bliley Act (15 U.S.C. § 6801, et seq.), directly and proximately causing the Data Breach;

iv. omitting, suppressing, and concealing material facts about their failure to secure Plaintiff's and Class Members' PII adequately; and

v. failing to disclose their noncompliance with industry standards, state and federal laws, and common law duties concerning data security, exposing Plaintiff's and Class Members' PII to heightened risks of theft.

116. Defendants' omissions and misrepresentations were material and likely to mislead reasonable consumers about the adequacy of their data security measures and their ability to protect Plaintiff's and Class Members' PII.

117. Defendants intentionally and knowingly misled Plaintiff and Class Members, inducing them to rely on Defendants' omissions and misrepresentations.

118. Had Defendants disclosed the truth about their inadequate data security measures and the vulnerability of their systems, Plaintiff and Class Members would not have entrusted their PII to Defendants or used their services. Defendants' deliberate concealment allowed them to continue operating without implementing necessary security measures, thereby putting Plaintiff and Class Members at significant risk.

119. Defendants acted intentionally, knowingly, maliciously, and with reckless disregard for Plaintiff's and Class Members' rights.

120. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class Members suffered actual damages, including fraud, identity theft, loss of the value of their PII, time and expenses monitoring for fraud, and the imminent risk of further fraud and identity theft.

121. On information and belief, Plaintiff's and Class Members' PII has already been published—or is at imminent risk of being published—on the Dark Web by cybercriminals.

122. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including actual and compensatory damages, injunctive relief, and attorneys' fees.

123. Defendants' wrongful conduct was and is injurious to the public, as it forms part of a generalized course of conduct impacting all Class Members and exposing the public to ongoing harm.

124. Defendants further violated 815 ILCS 505/2 by failing to notify Plaintiff and Class Members of the nature and extent of the Data Breach as required under the Illinois PII Protection Act, 815 ILCS 530/1, et seq.

125. Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff and Class Members seek actual and compensatory damages, injunctive relief, court costs, and attorneys' fees for Defendants' violations of the ICFA.

**Fifth CAUSE OF ACTION**
**Invasion of Privacy**

(On Behalf of Plaintiff and the Nationwide Class)

126. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 126, inclusive, of this Complaint as if set forth fully herein.

127. Plaintiff and the Class Members had a legitimate and reasonable expectation of privacy in their highly sensitive and confidential PII, entitling them to protection from unauthorized disclosure or access by third parties.

128. Defendants owed Plaintiff and the Class Members a duty of care to maintain the confidentiality and security of their PII, given their relationship and Defendants' assurances of adequate data protection.

129. The theft and unauthorized acquisition of Plaintiff's and the Class Members' PII by third parties constitutes a highly offensive intrusion upon their privacy, which would outrage any reasonable person.

130. The intrusion involved highly sensitive, private information that Plaintiff and the Class Members disclosed to Defendants with a reasonable expectation of confidentiality and protection from unauthorized access. Plaintiff and the Class Members trusted Defendants to safeguard their information, and this trust was reasonable under the circumstances.

131. The Data Breach constitutes a significant and unjustified intrusion upon Plaintiff's and the Class Members' private affairs, of a nature highly offensive to any reasonable person.

132. Defendants knowingly permitted the Data Breach, fully aware that their data

security practices were inadequate to protect Plaintiff's and the Class Members' PII.

133. Defendants failed to provide timely notice of the Data Breach, knowingly hindering Plaintiff's and the Class Members' ability to mitigate the harm caused by the disclosure.

134. Defendants acted with full awareness that their deficient cybersecurity practices would likely result in the exposure of Plaintiff's and the Class Members' PII, causing foreseeable harm.

135. As a direct result of Defendants' actions and omissions, Plaintiff's and the Class Members' PII was stolen and is now at risk of further unauthorized disclosure, resulting in damages as previously detailed.

136. Plaintiff's and the Class Members' personal information has been published on the Dark Web by cybercriminals.

137. Unless restrained by this Court, Defendants' continued mishandling of Plaintiff's and the Class Members' PII will cause ongoing and irreparable harm due to their failure to implement adequate data security measures.

138. Plaintiff and the Class Members have no sufficient remedy at law to address the ongoing risks posed by Defendants' retention of their PII. Monetary damages alone cannot resolve Defendants' persistent inability to safeguard the data.

139. Plaintiff, on behalf of the Class Members, seeks injunctive relief to prevent further harm, as well as compensatory damages, including the value of their invaded privacy, costs for credit monitoring and fraud prevention, and all other appropriate relief, including prejudgment interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all of the Class Members,

respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

1. For an Order certifying the Classes as defined herein and appointing Plaintiff and his Counsel to represent the Classes;

2. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

3. For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of PII compromised.

4. For an award of actual damages, statutory damages, and compensatory damages, in an amount to be determined at trial;

5. For an award of punitive and treble damages, in an amount to be determined at trial;

6. For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

7. For such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: November 26, 2024

Respectfully Submitted,

/s/ *Philip L. Fraietta*

Philip L. Fraietta, No. 6337165
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas,
32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
*pfraietta@bursor.com*

Thiago M. Coelho*
*thiago@wilshirelawfirm.com*
Shahin Rezvani*
*shahin.rezvani@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
9701 Wilshire Blvd., 12th Floor
Los Angeles, California 90212
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

Chumahan B. Bowen*
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach*
*jleinbach@wilshirelawfirm.com*
Reuben Aguirre*
*reuben.aguirre@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

* *Pro Hac Vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*